**Virginia MADJLESSI, Plaintiff,**

v.

**MACY'S WEST, INC., and Broadway Stores, Inc., Defendants.**

**No. C–97–0899 VRW.**

United States District Court,
N.D. California.

Nov. 17, 1997.

Virginia Madjlessi, Santa Rosa, CA, pro se.

Cheryl Schreck, Thelen Marrin Johnson & Bridges, Los Angeles, CA, Deborah J. Broyles, Thelen Marrin Johnson & Bridges, LLP, San Francisco, CA, for Defendants.

## ORDER

WALKER, District Judge.

Plaintiff Virginia Madjlessi commenced employment on September 21, 1992, with defendant Broadway Stores, Inc, in its Emporium retail unit in the Codding Town shopping center near Santa Rosa, California. Richard Graff, the store manager at all times relevant to this litigation, hired Madjlessi to work in an administrative capacity for the operations manager. After a few months, when a management position became available, Madjlessi interviewed for the position as a formality and, on November 16, 1992, Graff chose her to be the new sales manager of the lingerie department.

In February of 1994, while sales manager of the lingerie department, Madjlessi was diagnosed with breast cancer and, soon thereafter, had surgery. From March 1994 through December 1994, Madjlessi underwent six months of chemotherapy and three months of radiation as part of her treatment. During her chemotherapy, Madjlessi experienced side effects such as nausea, vomiting and weakness which rendered her unable to work for four days following each monthly treatment. Emporium allowed Madjlessi to arrange her work schedule around her treatments so that she would not have to work during those difficult four-day periods. During her radiation treatments, Madjlessi suffered few side effects, was able to perform her work without any special schedule and concedes that she "felt great" in relation to how she felt during chemotherapy. Madjlessi completed treatment and was in remission by the end of 1994.

Just prior to Madjlessi's diagnosis, Betty Stalnaker became assistant manager to Graff and, therefore, was responsible for evaluating all sales managers. In March 1994, because she was relatively new, she asked Graff to help her rate Madjlessi for the period from January 31, 1993, to January 29, 1994. Madjlessi received a performance rating of 5.1 placing her on the low end of "Good." The performance report identified Madjlessi's strengths as well as her weaknesses.

In August 1994, Stalnaker evaluated Madjlessi again and rated her "RI" or "requires improvement," citing Madjlessi's low sales statistics as compared to other sales managers. Madjlessi argues that these low statistics resulted because Graff refused to treat her as a team player after her cancer diagnosis and, hence, did not listen to her suggestions to order more inventory that women over fifty-five might buy. Other coworkers also noted a change in Graff's behavior toward plaintiff. See Decls of Dorothy Rice, Vivian Cassimus and Dana Kelley.

During the 1994 and 1995 fiscal years, Broadway experienced financial difficulties that required it to reduce staff and to make position realignments. Graff, thus, transferred Madjlessi to the position of sales manager in the electronics department. Although Madjlessi received the same hourly rate as before, she regarded the transfer as a demotion because she asserts that Graff knew that the electronics department would soon be disbanded. In August or September 1994, without telling anyone in management at Emporium, Madjlessi may have contacted the Department of Fair Employment and Housing ("DFEH"), to protest the alleged disability discrimination by Graff. DFEH declined to file charges due to lack of evidence.

When the electronics department was in fact eliminated in September 1995, Madjlessi was transferred with no reduction in pay to one of the few remaining open positions, sales associate in the men's department. Since this transfer meant that Madjlessi was no longer a manager, she was lower down on the "Emporium career path" than before.

Sometime after the elimination of the electronics department, Graff made Scott Reitenbach, an employee with a performance rating of "Good," team leader and did not consider Madjlessi for the job despite her seniority.

In October 1995, Broadway was acquired by Macy's parent company and the store became a Macy's store in early 1996. Since Macy's now owned two stores in the same mall, some kind of reduction in force was necessary. Macy's, therefore, stated that it would interview the Emporium employees and extend positions to those employees who had rated "very good" in their last performance review.

Macy's employment manager, Arlene Tumbaga, interviewed Madjlessi on December 7, 1995. Madjlessi contends that when asked why she had only rated "meets standards" in her last performance review, she replied that Graff and others did not want a person with breast cancer in management and Tumbaga then abruptly ended the meeting. Tumbaga asserts that she did not know of Madjlessi's diagnosis and that she ended the interview because the time allotted for it had expired.

Madjlessi was not offered employment with Macy's. She then filed the instant action, alleging disability discrimination in violation of the Americans with Disabilities Act

("ADA") and is proceeding without an attorney.

Defendants now move that the court grant them summary judgment because Madjlessi's claims prior to May 1995 are time-barred and, as to the remaining claims, because Madjlessi is not a "qualified individual with a disability" pursuant to the ADA and, hence, is not covered by the Act.

## I

Summary judgment is a method for the prompt disposition of an action in which there is no genuine issue of material fact. FRCP 56(c) provides for the granting of summary judgment where the moving party is entitled to judgment as a matter of law. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by pointing out the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A conclusory statement asserting an absence of evidence will not suffice to meet this standard, the lack of evidence must be demonstrated. Id at 326. Once the moving party has met its burden either by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial or by demonstrating the lack of evidence for the nonmoving party's case, FRCP 56(e) shifts to the nonmoving party the burden of presenting specific facts showing a genuine issue for trial. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950–52 (9th Cir.1978).

A party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings. Rather, responses, either by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue of fact. A mere "scintilla" of evidence supporting the nonmoving party's position will not suffice. There must be enough of a showing that the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The question in summary judgment motions is whether reasonable minds could differ as to the import of the evidence. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir.1987). "If the evidence is merely colorable ... or is not significantly probative, summary judgment may be granted." Id. at 1288. The nonmoving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the nonmoving party. *Eisenberg*, 815 F.2d at 1289.

## II

Broadway and Macy's (collectively "Broadway") argue that all of Madjlessi's claims prior to May 31, 1995 are time-barred pursuant to 42 USC § 2000e–5(e)(1) because the Equal Employment Opportunity Commission ("EEOC") did not file a charge of discrimination on Madjlessi's behalf until March 26, 1997. Madjlessi responds that none of her claims are time-barred because the discriminatory acts alleged were part of a continuing violation of the ADA.

A claim alleging employment discrimination in violation of the ADA must be filed with the EEOC within 300 days of when the allegedly unlawful employment practice occurred. See 42 USC § 2000e–5(e)(1) (Title VII); see also *Trevino–Barton v. Pittsburgh Natl. Bank*, 919 F.2d 874, 878 (3d Cir.1990) (incorporating remedial and procedural provisions of Title VII, including the applicable statute of limitations period into the ADA). Under the continuing violation doctrine, however, "a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period." *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.), cert. denied, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). The doctrine applies because the "continuing system of discrimination operates against an employee and violates his or her rights up to a point in time which falls within the limitations period." Id. In addition, an employee may establish a continuing violation " 'not only by demonstrating *** [an employer] wide policy of discrimination but also by demonstrating a series of related acts against a single individ-

ual.'" *Sosa v. Hiraoka,* 920 F.2d 1451, 1455 (9th Cir.1990) (quoting *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480 (9th Cir.1989)).

In the present case, the parties agree that Madjlessi cannot demonstrate a policy of systematic disability discrimination at Broadway stores. The parties disagree about whether Madjlessi can show a series of related, discriminatory acts against her alone. Broadway contends that the acts cannot be related because nearly a full year passed between Madjlessi's alleged discriminatory demotion to the electronics department and Scott Reitenbach's promotion.

Broadway's position reflects a misunderstanding of Madjlessi's allegations. The important link between the incidents is not when they occurred, see *Sosa,* 920 F.2d at 1456 (continuing violation established by allegations of acts occurring in 1982, 1985 and 1988), but rather that Madjlessi asserts that the incidents—low performance ratings, ignoring suggestions, transfer to a department on the brink of elimination, transfer from management to sales associate, failure to promote and failure to retain—all occurred because Broadway did not want someone with breast cancer on its management team. Assuming that Madjlessi's interpretation of the facts are true, the court finds that the incidents would constitute a continuing violation. The incidents show that Madjlessi's career was on a downward spiral which Madjlessi contends was orchestrated by Graff and others at Broadway and, hence, her claims would not be time-barred.

### III

Broadway next contends that Madjlessi cannot make out a prima facie case of disability discrimination because she cannot show that she is a "qualified individual with a

disability" under the ADA. Madjlessi contends that her breast cancer is a qualified disability.

"To state a prima facie case under the ADA, a plaintiff must prove that she is a qualified individual with a disability who suffered an adverse employment action because of [her] disability." *Sanders v. Arneson Products, Inc.,* 91 F.3d 1351, 1353 (9th Cir. 1996) cert. denied, —— U.S. ——, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997). The ADA provides three alternative definitions for the term "disability":

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment. 42 USC § 12102(2).[1]

Since Madjlessi contends that she has raised a material issue of fact regarding each of these three alternatives, the court addresses each subpart in turn.

### A

Subpart A evaluates whether Madjlessi's impairment "substantially limit[ed]" one or more of her "major life activities." Although the ADA does not define "substantially limits" and "major life activities," the regulations promulgated by the EEOC "provide significant guidance." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir.1995). They state that "[m]ajor life activities means [sic] functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR § 1630 .2(i). Madjlessi asserts that for two days after her chemotherapy treatments, she became totally disabled and needed help to do everything. The court will interpret this statement as implicating the activities of car-

---

1. In the instant case, there is no doubt that Madjlessi's breast cancer is an "impairment." EEOC regulations define impairment in pertinent part as:

   Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs (including speech organs) cardiovascular [or] reproductive ***. 29 CFR § 1630.2(h)(1).

   Loss of a breast or any portion thereof fits squarely into this definition. To the extent that Madjlessi confuses impairment and "qualified person with a disability," the court can only state that the ADA contains terms of art the flavor of which were not fully captured by the American Cancer Society's booklet, "Legal Protection for Cancer Patients Against Employment Discrimination." See Pl Ex G.

ing for oneself, performing manual tasks and working.

In deciding whether an impairment substantially limits a major life activity, the court considers: (1) The nature and severity of the impairment; (2) The duration or expected duration of the impairment; and (3) The permanent or long-term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 CFR § 1630.2(j)(2). In addition, when evaluating the major life activity of "working," the court assumes that

(1) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. (2) In addition to the factors listed in paragraph (j)(2) of this section [quoted above], the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working": (A) The geographical area to which the individual has reasonable access; (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). 29 CFR § 1630.2(j)(3).

Madjlessi admits that except for the four days she took off every month, she worked as usual. Indeed, in her papers, she avers that she worked even harder to move herself up the career path. Her coworkers praise her ability to work through adversity. Even though she may have worked while suffering the side effects of vomiting, weakness and nausea, this alone does not satisfy the "substantial limits" standard. See *Ellison v. Software Spectrum Inc.*, 85 F.3d 187, 192 (5th Cir.1996) ("Obviously, her ability to work was affected [by breast cancer]; but as reflected in the above quoted statutes and regulations, far more is required to trigger coverage under § 12102(2)(A)"). On the facts presented, the court finds that Madjlessi's breast cancer did not substantially limit her ability to work.

■ Madjlessi asserts that "but for" the reasonable accommodations Broadway gave her, she would have been substantially limited in her ability to work. The limitations she would have suffered at work, and did suffer in caring for herself and performing manual tasks were of such short duration, however, that they do not fall within the purview of the ADA. See e.g., *Sanders*, 91 F.3d. at 1354 (temporary psychological disability lasting three months with no residual effects not covered). It is true that breast cancer may return, but this possibility is too speculative to constitute a residual effect and cannot render Madjlessi substantially limited during the period relevant to the instant litigation.

*Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 878–79 (9th Cir.1989), cert. denied, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990), is not to the contrary. In *Kimbro*, the plaintiff suffered from chronic, short-term migraines and was found to be "handicapped" so that the reasonable accommodation of leaves of absences during the episodes was required. The very nature of the *Kimbro* plaintiff's illness was migraine episodes of short duration. In the present case, by contrast, Madjlessi does not suffer from short-term episodes of cancer. She will only suffer a short-term disability, analogous to migraines, if chemotherapy is again required.

### B

Madjlessi next contends that her documentation regarding her diagnosis of cancer and subsequent difficulties during chemotherapy treatments provide the necessary record of a disability to qualify her for coverage under subpart B. This argument misconstrues the law.

"Under the second definition of disability, [p]laintiff can qualify for coverage under the ADA by showing that she 'has a history of, or has been misclassified as having a mental or physical limitation that substantial limits one or more major life activities.'" *Mobley v. Board of Regents of Univ. System,* 924 F.Supp. 1179 (S.D.Ga.1996) (quoting 29 CFR § 1630.2(k)).

The documents Madjlessi presents to the court establish only that she saw an oncologist, underwent surgery, and unfortunately, had a difficult time during the two days following each chemotherapy treatment. For the reasons noted above, the mere fact that Madjlessi had cancer and was utterly incapacitated for brief periods of time after chemotherapy does not mean she was "substantially limited" for purposes of the ADA.

### C

Madjlessi asserts that several actions taken by Graff and others demonstrate that people at Broadway thought that her cancer substantially limited her ability to work.

The EEOC regulations define "regarded as having such an impairment" as follows:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment. 29 CFR § 1630.2(*l*).

An employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes she cannot perform a particular job, see *Ellison,* 85 F.3d at 192; "[t]he statutory reference to a substantial limitation indicates instead that an employer regards an employee as [substantially limited] in his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved." *Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986). Moreover, a court must not evaluate an employer's actions in a vacuum, see *Ellison,* 85 F.3d at 192; relevant to its analysis is whether the employer continued to employ the employee after the onset of her impairment. See e.g., *Motichek v. Buck Kreihs Co.,* 958 F.Supp. 266, 270 (E.D.La.1996) (because employer allowed plaintiff to return to work, plaintiff was not regarded as substantially limited).

In the instant case, there is no doubt that Madjlessi continued to work at Emporium until it became a Macy's. Since she cannot claim entitlement to a particular managerial job, her claim that the transfer from lingerie to electronics was discriminatory will not stand. A closer question is whether her subsequent transfer from management to sales associate was discriminatory and whether Graff's failure to make Madjlessi team leader was discriminatory because these actions kept Madjlessi out of management positions.

In support of her contention that these actions were discriminatory, Madjlessi offers evidence that Graff's attitude toward her changed, that he was a "rough manager" toward the end of his employment and that according to coworkers she was next in line for the position of team leader. In her own deposition, however, Madjlessi states that, after she moved to the men's department, Graff told her "It looks like you kicked it [the cancer]." If Graff believed that Madjlessi had beaten cancer, he would not regard her as substantially limited. Moreover, this "rough manager" kept Madjlessi in management for nearly a year after she showed no signs of cancer. The court cannot fathom why Graff would suddenly perceive Madjlessi as substantially limited months after she finished treatment when there is no indication that he believed her to be unworthy of a management position during and immediately following treatment.

In addition, Madjlessi's allegation that Tumbaga refused to hire her because Tumbaga knew Madjlessi had breast cancer must fail. This contention is supported by nothing more than Madjlessi's own speculation. Such speculation does not preclude

summary judgment, where as here, Tumbaga asserts that she relied on performance evaluations and others at Macy's substantiate her claim. See Pl Ex F. Without further explanation why Tumbaga would disregard company guidelines in order to make unfounded assumptions about Madjlessi based solely on a diagnosis of breast cancer, the court will not ascribe discriminatory intent to Tumbaga's conduct.

## IV

Madjlessi contends that because summary judgment is an extreme remedy, the court should use it sparingly and allow her to submit a FRCP 56(f) affidavit if it is inclined to grant summary judgment.

"A Rule 56(f) motion must show how additional discovery would preclude summary judgment and why a party cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact." *United States v. One 1985 Mercedes,* 917 F.2d 415, 418 (9th Cir.1990) (quoting *Mackey v. Pioneer National Bank,* 867 F.2d 520, 524 (9th Cir.1989)). Moreover, the burden of showing that the evidence does in fact exist and is not the product of speculation rests with the party opposing summary judgment. *Terrell v. Brewer,* 935 F.2d 1015, 1017 (9th Cir.1991).

Madjlessi has not informed the court of any additional evidence discovery might reveal. Providing her with an opportunity to file further papers is therefore, not warranted.

## V

Pursuant to the foregoing, the court ORDERS that defendants' motion for summary judgment (Doc # 10, pt 1) is GRANTED.

IT IS SO ORDERED.

### JUDGMENT

In accordance with this court's order of November 17, 1997, defendants' motion for summary judgment is GRANTED.